**LAW OFFICES OF ROBERT L. TARVER, JR.**
**66 South Main Street**
**Toms River, New Jersey 08757**
**(732) 341-2152 Telephone**
**(732) 341-2153 Facsimile**
Robert L. Tarver, Jr.
Attorney for Plaintiff, Johann Hunter

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

| | |
|---|---|
| **JOHANN HUNTER,**<br><br>    Plaintiff,<br><br>vs.<br><br>**MARKEL CORPORATION, SARAH GAVLICK, JOHN AND JANE DOES (1-10), supervisors, employees, agents, heirs, assigns and managers of Markel Corporation, who participated in any decisions concerning the employment actions regarding Johann Hunter,**<br><br>    Defendants. | **CIVIL ACTION**<br><br>**Civil Action No. 3:14-cv-05916**<br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff, JOHANN HUNTER ("HUNTER"), through her attorney and by way of Complaint against Defendant, MARKEL ("MARKEL") says:

### THE PARTIES

1.  Johann Hunter was at all times relevant, an employee of Markel, Inc. (hereinafter "MARKEL"). Plaintiff is an African American female.

2.  Markel is a private corporation doing business in the State of New Jersey with its principal place of business located at 4521 Highwoods Parkway, Glen Allen, Virginia but with offices in Red Bank, New Jersey.

1

3. Sarah Gavlick is and at all times relevant was a supervisor at Markel Corporation with supervisory authority over Johann Hunter. Ms. Gavlick is a resident and citizen of the State of New Jersey. She is named individually and in her capacity as a supervisor.

4. John and Jane Does (1-10) are supervisors, employees, agents, heirs, assigns and managers of Markel, who participated in any or all decisions concerning the employment actions regarding Johann Hunter as set forth below and as discovery may reveal.

## JURISDICTION

5. Pursuant to 28 USC § 1332 and 1441(b)(2) jurisdiction is properly vested in the Superior Court of New Jersey, Law Division in that:

   (a) the basis for removal was diversity under 28 USC § 1332(a); and

   (b) Plaintiff has named Sarah Gavlick, a resident and citizen of the State of New Jersey, as a defendant.

## VENUE

6. Notwithstanding the jurisdictional statement of paragraph 5, venue is properly vested in New Jersey as Plaintiff and Defendant Gavlick are residents and citizens of the State of New Jersey and Defendant Markel Corporation does business in the State of New Jersey with offices in Red Bank, New Jersey.

2

## THE FACTS

7.      Johann Hunter began working for Markel in April 13, 2009, as an Underwriter. As an Underwriter, she was responsible for Underwriting accounts. As evidence of her stellar performance, Plaintiff was awarded "Rookie of the Year" for Outstanding Performance of her duties as an Underwriter, in December 2009.

8.      In September 2010, Plaintiff enrolled in the Johnson School of Business located at Cornell University.  Plaintiff was attending the Johnson School of Business to complete the MBA program.  Plaintiff advised Markel that she was seeking financial support from Markel for her attendance at the Johnson School of Business.  In September 2010, Plaintiff had a conversation with Sarah Gavlick, Markel's Director of Underwriting Production, and Maria Hurley, Human Resources Manager.  Both Ms. Gavlick and Ms. Hurley advised Plaintiff that she "didn't have to do this" and it was not necessary to possess a MBA for her position as an Underwriter.

9.      In September 2010, Plaintiff was encouraged by supervisors to apply for an available Marketing Director position in Dallas, Texas.  In November 2010, Plaintiff was interviewed for that position by Greg Rubel.  Approximately two weeks later, Plaintiff was interviewed for that position by Jeff Lamb.  Plaintiff later learned that a Caucasian male was selected for that position.

10.     In December 2010, Plaintiff was requested by her supervisors to mentor two persons, Brian McGuire and Melissa Bello. She was requested to do so because Markel management recognized her talent and skill.

11.     In August 2011, Plaintiff discovered that there would be an available Territory Underwriting Manager (hereinafter "TUM") position.  On August 23, 2011, Sarah Gavlick advised Plaintiff that she would not consider Plaintiff for appointment to the TUM position.

3

12. On September 27, 2011, Markel posted an employment listing for the TUM position. The listing did not specify a particular area of business to which the TUM position would be assigned.

13. On October 3, 2011, Plaintiff submitted an application for the TUM position directly to Human Resources, Markel's Manager and Markel's Director. On October 4, 2011, Plaintiff received an email from Maria Hurley requesting an appointment to discuss the TUM position.

14. On October 5, 2011 at 10:30 am, Plaintiff was interviewed for the TUM position by Maria Hurley. Plaintiff was advised by Maria Hurley that she did not understand why Plaintiff was applying for the position and stated it appeared Plaintiff was "trying to figure out what I wanted to be when I grew up." Plaintiff did not understand why Ms. Hurley seemed resistant to the concept that she (plaintiff) was seeking upward mobility within the company.

15. On October 6, 2011, Plaintiff received an email from Maria Duffy advising her that another employee, Brett Dumas, was chosen for the position. Mr. Dumas, a white male, had less years of underwriting experience and less education than Plaintiff.

16. In May 2012, Plaintiff discovered that Michelle Bellomo and Vince Colosimo were interviewing for the Primary Casualty Manager (hereinafter "PCM") position. However, that position had not been posted.

17. Markel has a policy and practice of posting notices of open positions for prospective candidates. There was an opening for the position of TUM for Primary and Excess Casualty. The position of Excess Casualty Manager was never advertised. Failure to advertise that available position prevented Plaintiff from submitting an application for same. Vince Colosimo, a white male, was hired as TUM for Primary and Excess Casualty despite the fact that there was no advertisement for that position. Furthermore, Vince Colosimo was not qualified for that position as he did not have any prior managerial experience.

4

18. Plaintiff was pregnant in 2012 and was due in or about late September 2012. In early September 2012, Plaintiff had a discussion with Maria Hurley and Vince Colosimo regarding the distribution of her caseload while she was on maternity leave. Plaintiff was advised during that meeting that Vince Colosimo would handle all of her clients during the term of her maternity leave. It was understood pursuant to Markel's policies and practices, the accounts would remain in Plaintiff's name but would be temporarily serviced by Colosimo until her return. On September 24, 2012, Plaintiff commenced her maternity leave.

19. Plaintiff returned to full time employment on December 17, 2012. On that day, Plaintiff learned that several accounts that belonged to her prior to her maternity leave had been transferred to Vince Colosimo, Ruben Delgado and Robert Caballero. The transfer of Plaintiff's accounts to Vince Colosimo, Ruben Delgado and Robert Caballero was contrary to Markel's policies and practices.

20. Following her return from maternity leave, Plaintiff observed individuals that she was previously mentoring, Brian McGuire and Melissa Bello, were reporting directly to supervisor Barbara Luther to work on small umbrella accounts. Plaintiff was previously advised by Markel management that she was being groomed for that role. Both McGuire and Bello are white.

21. Following her return from maternity leave, Plaintiff noted that many of her higher performing clients had been transferred to Vince Colosimo. This transfer of clients was designed to negatively affect Plaintiff's performance and her ability to reach financial goals.

22. On January 5, 2012 Plaintiff met with manager Sarah Gavlick to address her concerns about this deviation from policy. When she complained of this variation from standard Markel policy, she was told by Gavlick that Vince was "more like the corporate clients" than she was. Plaintiff understood this to refer directly to the fact that both Vince and the transferred clients were Caucasian males and that she was an African American female.

5

23. Each year, underwriters are given goals to meet regarding production. On January 21, 2013, after she returned from maternity leave, Plaintiff was ordered by Vince Colosimo to produce exorbitant numbers which were approximately three times the number required of other similarly situated Markel employees. Plaintiff complained about the disparate and discriminatory treatment regarding her production expectations.

24. On January 25, 2013, Plaintiff learned that some of her assigned clients were contacting Vince Colosimo and Maria Hurley directly. This was contrary to the policy and practice at Markel. When she inquired about this action, Plaintiff was advised by Dawn Persecante that personnel were instructed that certain accounts were required to be cleared by Vince Colosimo. This requirement was a deliberate attempt to interfere with Plaintiff's relationship with her clients and to undermine her authority and competency.

25. On March 15, 2013, Plaintiff received a bonus from Markel. Bonuses are given as according to specific formulas. However, the bonus was not accurate because it was less than Plaintiff was entitled to receive. This was a deliberate attempt to harass and frustrate Plaintiff.

26. On or about April 16, 2013, Plaintiff forwarded correspondence to Markel Human Resources, complaining of discrimination. Following her complaint of discrimination, Plaintiff faced retaliation from Markel in that her requests for reasonable accommodations were denied. Following her correspondence, Plaintiff was continually harassed through micro management of her activities and scrutiny which other similarly situated employees were not forced to endure.

27. Defendants repeated acts of discrimination, including undermining her authority with her clients, setting unreasonable and unattainable financial goals for her to meet and improperly reducing her bonuses has created intolerable working conditions which amount to constructive discharge.

28. Defendant has continuously failed to promote Plaintiff and acted in a discriminatory fashion in addressing the terms and conditions of her employment.

29. As a result of the illegal discriminatory acts of Markel, Plaintiff suffered and continues to suffer damage to her physical and emotional health and well being.

## COUNTS OF THE COMPLAINT

30. The above actions of the defendants violate any or all of the following in being substantially motivated by illegal animus:

Count I: Violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et. seq., in that Johann Hunter was discriminated against due to her race and that any and all actions were motivated in whole or in part by racial animus;

Count II: Violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et. seq., in that Johann Hunter was discriminated against due to her gender and that any and all actions were motivated in whole or in part by gender bias;

Count III: Violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et. seq., in that Johann Hunter was retaliated against by defendants for making a claim of discrimination.

Count IV: Violation of future contract between Markel and Plaintiff, wherein Markel failed to enforce its policies, practices and handbooks, which promise that there will be a hostility free work environment, free from racial, sexual and other harassment;

Count V: Violation of Public Policy and the New Jersey Constitution; Constitutional Tort against Defendants for deprivation of the rights, liberties and happiness of Johann Hunter pursuant to New Jersey Constitution, Section I, Article I .;

Count VI: Intentional Tort Against Defendants for Intentional Infliction of Emotional Distress as to Johann Hunter.

**WHEREFORE,** Plaintiff Johann Hunter prays for judgment against the defendants, including but not limited to:

(a) an Order for back pay with all the sums of money paid which would have been earned by Plaintiff had she not been discriminated against;

(b) an award of liquidated damages representing back pay and all sums of money Plaintiff would have earned had he not been discriminated against;

(c) an award of compensatory damages for pain and suffering and other compensatory damages applicable;

(d) an award of punitive damages and any other exemplary, punitive treble damages which are allowed by statutes pleaded herein;

(e) any other award for injunctive and equitable relief allowed by statute, or pursuant to the equitable and just power of the Court to which Plaintiff is entitled; and

(f) an award for any and all counts as such relief may be relevant.

(g) an award of attorney's fees and costs as allowed by statute or law.

(h) for such other relief as the Court deems just and proper.

                                                LAW OFFICES OF ROBERT L. TARVER, JR.


                                                By: _s/ Robert L. Tarver, Jr._____
                                                    Robert L. Tarver, Jr., Esq.
                                                    Attorney for Plaintiff

Dated: October 16, 2014

8

## CERTIFICATION

The undersigned attorney for Plaintiff Johann Hunter hereby certifies that the within matter is not the subject of any other action or arbitration pending or contemplated, nor are there any other parties known to Plaintiff who should be joined in this proceeding.

                                        LAW OFFICES OF ROBERT L. TARVER, JR.

                                        By:__s/ Robert L. Tarver, Jr._____
                                              Robert L. Tarver, Jr., Esq.
                                              Attorney for Plaintiff

Dated: October 16, 2014

## JURY DEMAND

The undersigned attorney for Plaintiff Johann Hunter hereby demands a trial by jury as to all issues herein.

                                        LAW OFFICES OF ROBERT L. TARVER, JR.

                                        By:__s/ Robert L. Tarver, Jr._____
                                              Robert L. Tarver, Jr., Esq.
                                              Attorney for Plaintiff

Dated: October 16, 2014

## DESIGNATION OF TRIAL COUNSEL

The undersigned attorney for Plaintiff Johann Hunter hereby designates Robert L. Tarver, Jr., Esq. as trial counsel herein.

>     LAW OFFICES OF ROBERT L. TARVER, JR.
>
>
>     By:___s/Robert L. Tarver, Jr._____
>         Robert L. Tarver, Jr., Esq.
>         Attorney for Plaintiff

Dated: October 16, 2014